# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**EFRAIN FIGUEROA,**

      **Plaintiff,**

v.                                                                         Case No: 6:20-cv-470-DCI

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

___

## MEMORANDUM OF DECISION[1]

**THIS CAUSE** is before the Court on Claimant's appeal of an administrative decision denying his application for disability insurance benefits and supplemental security income. In a decision dated March 13, 2019, the Administrative Law Judge (ALJ) found that Claimant had not been under a disability, as defined in the Social Security Act, from February 1, 2015, the alleged disability onset date, through March 13, 2019, the date of the ALJ's decision. R. 17-28. Having considered the parties' memoranda and being otherwise fully advised, the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **AFFIRMED**.

**I.      Issues on Appeal**

Claimant raises the following two arguments on appeal:

1) The ALJ's residual functional capacity (RFC) assessment does not account for all the limitations caused by Claimant's bipolar disorder. *See* Doc. 17 at 10-11.

___

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. Doc. 12.

2) There is an unresolved conflict between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT).  *See* Doc. 17 at 16-20.

## II.     Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted).  "With respect to the Commissioner's legal conclusions, however, our review is *de novo*."  *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III.    Discussion

### A.  Residual Functional Capacity

Here, Claimant argues that the ALJ failed to consider the episodic nature of Claimant's bipolar disorder and failed to include any limitations on Claimant's ability to attend work or remain on task, and thus that the ALJ erred in assessing Claimant's RFC.  *See* Doc. 17 at 10-11.  The Court rejects this argument.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work.  *Phillips*, 357 F.3d at 1238.  "The residual functional capacity is an assessment, based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The ALJ is responsible for determining the claimant's RFC.  20 C.F.R. §§ 404.1546(c); 416.946(c).  In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of the treating, examining, and non-examining medical sources.  20 C.F.R. §§

404.1545(a)(1), (3); 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). Where a claimant is diagnosed with bipolar disorder, the Eleventh Circuit has noted that "the ALJ must consider the episodic nature of bipolar disorder." *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1046 (11th Cir. 2020) (citing *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267 (11th Cir. 2019)).

Here, at step four, the ALJ found that Claimant had the RFC to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that Claimant "is limited to performing simple, routine tasks and can have only occasional interaction with the public and coworkers." R. 22. In assessing this RFC, the ALJ stated as follows with respect to Claimant's mental impairments:

> Despite the claimant's allegation that his mental health symptoms are so extreme as to require more limitations than found herein, mental status examinations have been largely normal (19F; 24F). However, the evidence does suggest that, at times, he appears to have poor judgment, a depressed mood, and appears anxious. (17F/6; 19F/6). Mental status examinations also indicate that he has displayed irritable behavior. (19F/19). Given such findings, it is reasonable that the claimant should be limited to simple, routine tasks and can have only occasional interaction with the public and coworkers. The record certainly does not contain evidence to suggest that his symptoms support additional limitations to those found herein.

> While the evidence indicates that the claimant has some deficit in functioning related to his mental health condition, it does not support all of his allegations. Despite complaints of auditory hallucinations and an inability to sleep, at his most recent examination he reported that his medications were "very helpful" in controlling the voices he hears and his sleep. (24F/2). His mental status examination showed no evidence of hallucinations and he appeared to have fair insight and judgment (*id.*). Notably, he has denied aggression, mood swings, irritability, sleep deficit, and hallucinations to his providers. (19F/5).

> With regard to mental status examinations, the claimant has generally had fair judgment, fair memory, fair concentration, congruent mood, adequate grooming, and cooperative behavior. (19/F). At times, the claimant has shown evidence of hallucinations and paranoia; however, as stated above, he reports this is controlled with medications. Such objective findings suggest that in spite of some abnormalities in mental functioning, the claimant retains more mental ability than alleged. He has generally been cooperative with his providers, undermining

> allegations of more difficulty in interacting with others than found herein. With treatment, his hallucinations improved, as did his sleep deficit. (19F/3; 24F/2).
>
> Moreover, the claimant's treatment has been conservative in nature and he has not required any inpatient hospitalizations for an exacerbation of his mental health symptoms during the relevant period. This evidence, in combination with his own reports that his symptoms are improved with medications is indicative that his mental health condition is not as debilitating as alleged.

R. 24.

Thus, the ALJ noted that Claimant experiences "good days"[2] and "bad days"[3] that are characteristic of a person who has bipolar disorder. *See, e.g.*, *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267–68 (11th Cir. 2019) ("We agree with our sister Circuits that people with chronic diseases can experience good and bad days. And when bad days are extremely bad and occur with some frequency, they can severely affect a person's ability to work.")  The ALJ discussed Claimant's mental impairments at length and explained how such impairments affect Claimant's ability to work—such that the ALJ limited Claimant to "simple, routine tasks and . . . only occasional interaction with the public and coworkers." R. 24.  The Court notes that in reaching his conclusion, the ALJ did not rely only on citations to "good days"; the content of the ALJ's decision shows that the ALJ comprehensively considered Claimant's mental health symptoms. Accordingly, the Court finds that the ALJ addressed the episodic nature of Claimant's mental

---

[2] For example, the ALJ noted that "mental status examinations have been largely normal"; and that "at [Claimant's] most recent examination he reported that his medications were 'very helpful' in controlling the voices he hears and his sleep." R. 24

[3] For example, the ALJ noted that "at times, [Claimant] appears to have poor judgment, a depressed mood, and appears anxious"; that "[m]ental status examinations also indicate that he has displayed irritable behavior"; and that "[a]t times, the claimant has shown evidence of hallucinations and paranoia." R. 24.

health conditions. Claimant's arguments to the contrary essentially ask the Court to reweigh the evidence, which is not this Court's function. *Winschel*, 631 F.3d at 1178.

Claimant also argues that the ALJ failed to include any limitations on Claimant's ability to attend work or remain on task. *See* Doc. 17 at 10-11. Claimant states that "the ALJ should have included a restriction for unexcused absences or time off task in the RFC assessment because the record shows there were periods of time when [Claimant's] bipolar disorder severely limited his ability to function." *Id.* at 11. However, Claimant does not cite to any portion of the record that supports the contention that Claimant was restricted in terms of attending work or staying on task. Rather, Claimant makes the general argument that "the overall evidence shows that [Claimant] was . . . unable to fulfill a regular work schedule due to his shifting moods, poor sleep, and hallucinations." *Id.* While Claimant cites to record evidence of shifting moods, poor sleep, and hallucinations,[4] Claimant does not provide any citation to the conclusion he asks the Court to draw—that this evidence demonstrates Claimant is limited in his ability to attend work or stay on task.[5] Again, it is not the Court's role to reweigh the evidence. *Winschel*, 631 F.3d at 1178. To the extent Claimant argues that the ALJ did not account for unexcused absences or time spent off-task, Claimant does not establish that these limitations are reflected in the record. Accordingly, the Court finds that the ALJ did not err by not including such a limitation in the RFC.

---

[4] *See* Doc. 17 at 11 (citing R. 791, 807, 908, 938 (shifting moods); R. 807, 861-62 (poor sleep); and R. 792, 808, 885, 908, 922, 926, 930, 940-41 (hallucinations)).

[5] Claimant does cite to Claimant's testimony at the hearing and states that Claimant "testified that he lost his last job because he was not performing well and because he was missing too many days of work." Doc. 17 at 11 (citing R. 51). However, at the hearing, Claimant actually stated: "I wasn't performing right anymore . . . I was getting too . . . aggressive with resident, not . . . waking – I don't know. I wouldn't sleep. I wouldn't go on time. Like she saw that I was not performing like I was at the beginning." R. 51. The Court is not convinced that Claimant has accurately characterized this testimony, but, in any event, does not find that such testimony establishes the existence of a limitation.

### B. Unresolved Conflict

Claimant argues that the vocational expert's (VE) testimony conflicted with the Dictionary of Occupational Titles (DOT) and the ALJ erred by failing to identify and resolve the conflict. *See* Doc. 17 at 16-20. The Court rejects this argument.

In *Washington v. Commissioner of Social Security*, the Eleventh Circuit recently clarified that "the ALJ has an affirmative obligation to identify any 'apparent' conflict [between the VE's testimony and the DOT] and to resolve it." 906 F.3d at 1362; *see* SSR 00-4p, 2000 SSR LEXIS 8, 2000 WL 1898704. The Circuit explained:

> The ALJ must ask the VE whether there is a conflict *and* must ask for an explanation if there appears to be a conflict. Whenever a conflict is 'apparent,' the ALJ must also ask the VE about it. Moreover, '[w]hen an ALJ identifies an apparent conflict that was not raised during a hearing, [the ALJ] can request an explanation of the conflict by submitting interrogatories to the vocational expert.' During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them.

*Washington*, 906 F.3d at 1362 (emphasis and alterations in original) (internal citations omitted) (citing *Pearson v. Colvin*, 810 F.3d 204, 208 (4th Cir. 2015)). By failing to identify and resolve apparent conflicts, an ALJ breaches "his duty to fully develop the record and offer a reasonable resolution of [the] claim." *Id.* at 1366. A conflict is "apparent" if it "seem[s] real or true, but not necessarily so" to an ALJ with ready access to and close familiarity with the DOT. *Id.* (quoting *Pearson*, 810 F.3d at 209). An "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE." *Id.* at 1365. Instead, "[a]t a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id*.

Here, the ALJ asked the VE to assume a hypothetical individual of Claimant's age, education, and work experience, who is limited to medium work (as defined by the Social Security regulations), and who would be limited to simple routine tasks with only occasional interaction

with the public and co-workers. R. 69. The ALJ asked the VE if there would be any work in the national economy that would accommodate those limitations and asked the VE to provide examples. *Id.* The VE testified that such a person could work as a kitchen helper or as a cleaner II, jobs that exist in the national economy. *Id.* Based on the VE's testimony, the ALJ found that Claimant is capable of making a successful adjustment to work that exists in significant numbers in the national economy and therefore is not disabled.

The two jobs at issue here—kitchen helper and cleaner II—have a reasoning level of two under the DOT. *See* DOT 813.687-010, 1991 WL 672755 (kitchen helper); DOT 919.687-014, 1991 WL 687897 (cleaner II). Claimant argues that the ALJ erred by not identifying and resolving an apparent conflict between Claimant's ability to perform only simple, routine tasks and the VE's testimony that Claimant could perform reasoning level two jobs. *See* Doc. 17 at 17-19. In sum, Claimant argues that a limitation to "simple routine tasks" is apparently inconsistent with reasoning level two jobs. As another court in this Circuit has noted, "[u]ntil recently, courts in this Circuit were split on [this question] . . . . The Eleventh Circuit appears to have now resolved [this issue]." *Jordan v. Comm'r of Soc. Sec.*, No. 20-14126-CIV, 2021 WL 3115916, at *4 (S.D. Fla. July 6, 2021), *report and recommendation adopted*, No. 2:20-CV-14126, 2021 WL 3111598 (S.D. Fla. July 22, 2021).

In reaching its holding in *Valdez v. Commissioner of Social Security*, the Eleventh Circuit stated that a limitation to simple, routine, and repetitive tasks is not inconsistent with DOT reasoning level two work. 808 F. App'x 1005, 1009 (11th Cir. 2020).[6] In *Valdez*, the claimant argued that the ALJ erred in concluding that he could perform a job with a reasoning level of three

---

[6] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

because the ALJ had limited the plaintiff to simple, routine, and repetitive tasks. *Id*. at 1007-08. In responding to this argument, the Eleventh Circuit stated:

> We haven't decided the issue Valdez raises here—whether a limitation to simple, routine, and repetitive work is inconsistent with a job that requires a reasoning level of three. But it is unnecessary to decide it because, even if Valdez was not able to work as an order clerk, the ALJ still concluded that he could perform two other jobs: lens inserter, which has a reasoning level of one, *see* DOT, 713.687-026, and lens-block gauger, which has a reasoning level of two, *see id.* 716.687-030. Valdez has not argued that these jobs are inconsistent with his residual functional capacity and they are not.

*Id.* at 1009.

Claimant contends that the statement in *Valdez* that a person limited to simple, routine tasks can still perform a reasoning level two job is *dicta*. *See* Doc. 17 at 18-20. However, as the court in *Jordan* noted, several federal courts have recently concluded otherwise. *See Jordan*, No. 20-14126-CIV, 2021 WL 3115916, at *4 (collecting cases)[7]; *see also Acevedo v. Comm'r of Soc. Sec.*, No. 6:20-CV-448-LRH, 2021 WL 3288107, at *9 (M.D. Fla. Aug. 2, 2021) (collecting cases and stating that "no apparent conflict exists between the limitation to simple, routine, and repetitive tasks and an occupation requiring a reasoning level of two."). In addition, in another unpublished opinion specifically relying on *Valdez*, the Eleventh Circuit again found that "there [is] no apparent conflict between an RFC limitation to simple, routine, repetitive tasks and the DOT's description

---

[7] The court in *Jordan* offers the following citations: *Fletcher v. Saul*, No. 19-CV-01476, 2020 WL 4188210, at *1 (M.D. Fla. July 21, 2020) (recognizing that *Valdez* "determines that no apparent conflict [with the DOT] exists between a limitation to a 'simple' task and a finding that the petitioner can perform a job with a reasoning level of two"); *Garrow v. Saul*, No. 19-CV-00586, 2020 WL 5802493, at *7 (M.D. Fla. Aug. 19, 2020), *report and recommendation adopted*, 2020 WL 5797867 (M.D. Fla. Sept. 29, 2020) (relying on *Valdez* to find no apparent conflict between a limitation to simple, routine and repetitive tasks and a reasoning level of two); *Green v. Saul*, No. 19-CV-02021, 2020 WL 5743185, at *9-10 (M.D. Fla. Sept. 25, 2020) (same); *Matos v. Saul*, No. 20-20615-CIV, 2021 WL 1092293, at *20 (S.D. Fla. Feb. 19, 2021), *report and recommendation adopted*, 2021 WL 1090693 (S.D. Fla. Mar. 22, 2021) (same). *But see Poland v. Comm'r of Soc. Sec.*, No. 19-CV-01363, 2020 WL 3073772, at *3 (M.D. Fla. June 10, 2020) (describing this statement in *Valdez* as *dicta*).

of jobs requiring level two reasoning." *Peterson v. Comm'r of Soc. Sec.*, No. 21-10086, 2021 WL 3163662, at *3 (11th Cir. July 27, 2021) (citing *Valdez*, 808 F. App'x 1005 at 1009). Given the weight of the caselaw, the Court similarly finds no apparent conflict between Claimant's limitation to "simple, routine tasks" and a reasoning level of two. Thus, the Court concludes that, here, there is no apparent conflict between the VE's testimony and the DOT. Since there was no conflict or apparent conflict for the ALJ to address given a reasonable comparison of the DOT with the VE's testimony, then there is no error under *Washington*.

### IV. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the Commissioner's decision is due to be affirmed.

Accordingly, it is **ORDERED** that:

1. The Commissioner's decision is **AFFIRMED**; and
2. The Clerk is **DIRECTED** to enter judgment accordingly and close the file.

**ORDERED** in Orlando, Florida on September 13, 2021.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE